CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 20 2006
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| JACOB B. FRITH, II, ET AL.<br>    Plaintiffs, | )<br>)<br>)   Civil Action No. 4:05-cv-00074 |
| v. | )<br>)   **MEMORANDUM OPINION** |
| MARTINSVILLE THERMAL, INC.,<br>ET AL.<br>    Defendants | )<br>)<br>)<br>)   By: Hon. James C. Turk<br>)   Senior United States District Judge |

Plaintiffs Jacob E. Frith, II, James B. Frith, Jr., Frith Construction Co., Inc., James B. Frith, Jr. & Associates, LLP, and Great Northern Nekoosa Corp. filed an action in a circuit court of the Commonwealth of Virginia seeking a declaration extinguishing an easement held by the defendants and money damages. The action was removed to this court and the parties were realigned pursuant to this court's order issued May 19, 2006. By pre-answer motion, pursuant to Federal Rule of Civil Procedure 12(b)(2), defendant Thermal Ventures II, LP ("TVII"), has asked this court to dismiss the plaintiffs' claims against it for want of personal jurisdiction. Additionally, TVII, defendant Martinsville Thermal, LLC ("Martinsville Thermal"), and the plaintiffs have filed cross-motions for summary judgment.

Having considered the briefs and arguments of both parties the court concludes that the plaintiffs' motion for summary judgment should be denied, defendant TVII's motion to dismiss should be granted, and the defendants' motion for summary judgment should be granted in part and denied in part.

1

## I.

Defendant Martinsville Thermal, of which defendant TVII is the sole member, owns a steam production facility on the south bank of the Smith River in Ridgeway, Virginia. The facility sits at the center of an industrial park that includes approximately twelve industrial plants, many of which are capable of utilizing steam in their production processes and for heating. In 1982 Martinsville Thermal's predecessor in interest obtained contiguous easements burdening the properties of several industrial park landowners, including the plaintiffs' predecessors in interest. The easements permitted the construction and maintenance of a steam distribution system that allows the production facility to provide steam to the industrial park plants. In May of 2004, Martinsville Thermal stopped steam production at the plant. Since that time the plaintiffs and other industrial park landowners have used other sources to fulfill their steam needs.

## II.

Defendant TVII has asked this court, pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss the plaintiffs' claims against it for want of personal jurisdiction. When personal jurisdiction is properly challenged under Rule 12(b)(2), the burden is on the plaintiff "to prove grounds for jurisdiction by a preponderance of the evidence." Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc. 333 F.3d 390, 396 (4th Cir. 2003). The jurisdictional question is to be resolved by the court. Id. In the instant case, a diversity action arising under Virginia law, jurisdiction must be obtained under Virginia's long arm statute. The court, therefore, must "determine whether the long-arm statute authorizes the exercise of jurisdiction in the circumstances presented." Ellicott Mach. Corp. v. John Holland Party Ltd. 995 F.2d 474, 477 (4th Cir. 1993). If that question is

2

answered affirmatively, the court must consider "whether the exercise of jurisdiction comports with Fourteenth Amendment due process standards." Id.

In their complaint the plaintiffs allege that TVII does business in the Commonwealth of Virginia, a basis for jurisdiction under section 8.01-328.1(A)(1) of the Virginia Code. In support of this claim, the plaintiffs note that Thermal Ventures II is the sole member of defendant Martinsville Thermal, the owner of the steam plant and easements. The plaintiffs also point to an e-mail sent by Mark Butta on May 8, 2006 to the agent of a demolition company. The e-mail header indicates that the message was sent from an address at "tvii.biz." In the body of the e-mail Mr. Butta refers to the steam plant owned by defendant Martinsville Thermal as "the steam plants that we own." (Deatherage Aff. Ex. A at 1). Under his name at the bottom of the e-mail, Mr. Butta gives as his title, "Vice President Business Development Thermal Ventures II, LP[.]" The plaintiffs claim that TVII cannot allow its agents to hold themselves out as TVII employees in an e-mail referring to the steam plants that "we own," while claiming that TVII transacts no business in Virginia.

The court finds this evidence insufficient to establish grounds for the exercise of personal jurisdiction by this court. While TVII is the sole member of Martinsville Thermal, "the mere existence of a parent-subsidiary relationship does not conclusively indicate that a parent is within a court's jurisdiction by way of the subsidiary's in-state activites." Omega Homes, Inc. v. Citicorp Acceptance Co, 656 F. Supp. 393, 400 (W.D. Va. 1987). For the court to exercise *in personam* jurisdiction over a defendant parent corporation, "the plaintiff should show (1) that the subsidiary's activities in Virginia are sufficient to confer jurisdiction pursuant to section 8.01-328.1 and (2) that the relationship between the parent and its subsidiary is such that the

3

subsidiary's actions can be imputed to the parent." Id.

The first of these two requirements is satisfied in the instant case. Both parties recognize that this court has personal jurisdiction over Martinsville Thermal. The second requirement may be met by a showing that "the parent uses the subsidiary as its alter ego" or that "the subsidiary is the implied agent of the parent." Id.

The evidence submitted by the plaintiff does not prove that Martinsville Thermal and Thermal Ventures II have this kind of relationship. In affidavits submitted by the defendants, Mark Butta has identified himself as holding a position as vice president for Martinsville Thermal, LLC, (Defs.' Mem. Supp. Summ. J. Ex. A at 1), as well as a position as vice president for Thermal Ventures II (Defs.' Br. Supp. Mot. Dismiss Ex. C at 1). He serves as an agent for both companies. The e-mail that Mr. Butta sent was addressed to Mr. Deatherage, an individual who knew Mr. Butta from prior contact, and who already knew that Martinsville Thermal was the owner of the steam plant.[1] In this context it is more likely that Mr. Butta was communicating on behalf of Martinsville Thermal than that he was communicating on behalf of Thermal Ventures II.

More importantly, the e-mail that the plaintiffs identify was sent on May 8, 2006, six months after commencement of the action and nearly two years after the conduct giving rise to the plaintiffs' claims occurred. Under Virginia's long arm statute the cause of action with respect to which the court is exercising personal jurisdiction must arise from the conduct that

---

[1] In his affidavit Mr. Deatherage specifically identifies the plant as "Martinsville Thermal's Henry County plant" (Deatherage Aff. 1).

4

forms the basis for the exercise of jurisdiction. Va. Code Ann. § 8.01-328.1(A), (C).[2] To the minimal extent that the e-mail suggests that Martinsville Thermal was an implied agent or alter ego of Thermal Ventures II in May of 2006, it permits only a very weak inference that the two companies had such a relationship at the time of the conduct giving rise to the suit. The evidence does not establish by a preponderance of the evidence that TVII transacts business in Virginia such that jurisdiction is proper under § 8.01-328.1. The plaintiffs' claims against TVII will therefore be dismissed.

### III.

The plaintiffs and defendants have also filed cross motions for summary judgment, each contending that there is "no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). Each party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any," which it believes demonstrate the absence of a genuine issue of material fact." Celotex v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This burden may be discharged by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325. Summary judgment then becomes appropriate against a "party who fails to make a showing sufficient to establish the existence of an element essential to

---

[2] A defendant's continuous operations within Virginia may be "'so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities.'" Witt v. Reynolds Metals Co., 397 S.E.2d 873, 875 (Va. 1990) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 318 (1945)). There is, however, neither an allegation nor sufficient evidence from which the court can conclude that Thermal Ventures II has engaged in a "persistent course of systematic and substantial business activities" in Virginia as this standard requires. Id.

5

that party's case, and on which that party will bear the burden of proof at trial." Id. at 323.

The plaintiffs advance two theories in support of their claim that the defendant is no longer entitled to maintain its easement. The first is the theory that the purpose for which the easement was created has ceased, and with it the easement itself. The second is the theory that the defendant abandoned the easement.

Under Virginia law, "'if the particular purpose for which [an] easement is granted is fulfilled or otherwise ceases to exist the easement . . . falls to the ground.'" Pyramid Dev., LLC., v. D&J Assocs., 553 S.E.2d 725, 728 (Va. 2001) (quoting 1 Frederick D.G. Ribble, Minor on Real Property § 107.1 at 145–46 (2d ed. 1928)) (alterations in original); Hudson v. Am. Oil Co., 152 F. Supp. 757, 764 (E.D. Va. 1957) aff'd 253 F.2d 27 (4th Cir. 1958). The parties have represented that they dispute the purpose of the easement at issue in this case. In their brief, the plaintiffs argue that the purpose for which the easement was originally granted was "the construction and maintenance of a steam distribution system." (Pl.'s Mem. Supp. Mot. Summ. J. 6). The defendants, on the other hand, contend that "the purpose of the easement was to construct and maintain an assortment of building materials and equipment which would become fixtures upon the easements capable of distributing steam and returning condensate." (Defs' Br. Supp. Mot. Summ. J. 6). The parties have not indicated how the differences between their respective formulations of purpose are material to this case.

Under Virginia law, the intention of the parties executing the instrument controls. Camp v. Camp, 260 S.E.2d 243, 245 (Va. 1979). The intention should be ascertained from the language of the deed. "If the language is explicit and the intention thereby free from doubt, such intention is controlling, if not contrary to law or to public policy, and auxiliary rules of

6

construction should not be used." Id. The deed creating the easement in the instant case is unambiguous as to the purpose of the easement. The deed sets it forth as follows:

> Being for the purpose of constructing and maintaining thereon or thereunder such of them as the party of the second part [Martinsville Thermal's predecessor in interest] deems necessary; its pipes, piping system, pylons, stands, piers, pumps, cables, circuits, conduits, meters and other appurtenances, equipment and appliances constituting the steam distribution and condensate return system, to be located wholly within said ten (10) foot wide easement.

It is not disputed that Martinsville Thermal continues to maintain the "appurtenances, equipment and appliances constituting the steam distribution and condensate return system" as they deem necessary, and so the purpose cannot be said to have ceased.[3]

The plaintiff points out that the easement was "obviously" created with the expectation that steam would actually be produced, and emphasizes that production has eased. Though this may be true, Virginia's cessation of purpose doctrine does not extinguish an easement merely because its holder refrains from putting the easement to its expected use. Virginia courts have framed the cessation of purpose doctrine in terms that require something approaching impossibility of purpose. See Pyramid Dev., LLC. v. D&J Assocs., 553 S.E.2d 725, 728 (Va. 2001) (finding that an easement's purpose, which was to "[a]llow access to the spur tracks and sidings" of a railroad operated by a third party, "ceas[ed] to exist" when the railroad closed); McCreery v. Chesapeake Corp. of Va., 257 S.E.2d 828, 831 (Va. 1979) (finding that the purpose for an easement "no longer existed" where the easement had been created to allow access to a public road which was closed by the government); Am. Oil. Co. v. Leaman, 101 S.E.2d 540, 552 (Va. 1958); Hudson v. Am. Oil Co., 152 F. Supp. 757, 764 (E.D. Va. 1957) (same), aff'd, 253 F.2d 27 (4th Cir. 1958).

---

3

7

In Virginia, nonuse of an easement is addressed by the other doctrine that the plaintiff presents in support of its claim, abandonment. Nonuse alone, however, does not establish abandonment. Lipscomb v. Commins, 186 S.E.2d 74, 75 (Va. 1972). Rather, abandonment is established by "[n]onuse of an easement coupled with acts which evidence an intent to abandon or which evidence adverse use by the owner of the servient estate, acquiesced in by the owner of the dominant estate . . . ." Robertson v. Robertson, 197 S.E.2d 183, 188 (Va. 1973). The plaintiffs do not advance a theory of adverse use, rather they claim that certain acts of the defendant indicate its intent to abandon the easements. Under Virginia law, the plaintiffs must prove the fact of intention to abandon by "clear and unequivocal evidence." Lipscomb, 186 at 75.[4]

In support of their claim, the plaintiffs point to the uncontested fact that steam production has ceased since 2004. With respect to intention, the plaintiff offers the affidavit of David Deatherage, an agent of a demolition company. According to the affidavit, Mark Butta, an agent of Martinsville Thermal, met with the plaintiffs and Mr. Deatheridge for the purpose of settlement negotiations. Several weeks later, Mr. Butta contacted Mr. Deatheridge via telephone and e-mail, asking if Mr. Deatheridge was still interested in quoting him a price for demolition of some or all of the steam facilities. Mr. Deatheridge requested more detailed information, and Mr. Butta said that he would be in touch. According to the affidavit, no further discussions occurred.

---

[4] "The question of burden of proof is one of substance, not procedure, and is governed by the substantive law of the case in a diversity action." C. Douglas Wilson & Co v. Ins. Co. of N. Am., 590 F.2d 1275, 1280 n.1 (4th Cir. 1979). In their brief, the plaintiffs state that abandonment must be proven by clear and *convincing* evidence. (Pl.'s Mem. Supp. Mot. Summ. J. 6.) However, the case that the plaintiffs cite for this proposition clearly explains that "[t]he burden of proof to show the abandonment of an easement is upon the party claiming such abandonment, and it must be established by clear and *unequivocal* evidence." Lindsey v. Clark, 69 S.E.2d 342, 344 (Va. 1952) (emphasis added).

8

It is not clear that this evidence would be admissible at trial. See Fed. R. Evid. 408 (precluding the admission of "[e]vidence of conduct or statements made in compromise negotiations"). Even if it were, however, it is not sufficient to create a genuine issue of material fact. A factual issue is not "genuine" unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. Id. at 249–50.

Drawing all reasonable inferences in favor of the plaintiffs, Mr. Butta's contact with Mr. Deatheridge suggests that the defendants may have considered demolition of the plant. However, no reasonable jury could find from the information contained in Mr. Deatheridge's affidavit clear and unequivocal evidence of an intent to abandon the easement.

Because there is not sufficient evidence favoring the plaintiffs for a finding of fact in their favor, there is no genuine issue of material fact on either the issue of abandonment or cessation of purpose. Because the defendant is entitled to judgment as a matter of law that the easement the defendants claim has not been extinguished or abandoned, the court will grant the defendants' motion for summary judgment with respect to these claims. The plaintiffs' motion will be denied.

## IV.

The defendants have also moved for summary judgment with respect to the plaintiffs' claim for damages. In their complaint, the plaintiffs allege that by stopping steam production, the defendants caused the plaintiffs damages in the amount of $250,000, which they spent in order to obtain steam from other sources. The defendants argue that they are entitled to summary

judgment because the plaintiffs, in their argument for summary judgment, "have not provided any justification in law or in fact" for their damages claim. (Defs.' Mot. Summ. J. 13.)

The initial burden on a motion for summary judgment, however, rests with the moving party. As the Court of Appeals for the Fourth Circuit has explained, "[r]egardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). Even if a party does not respond at all to a motion for summary judgment, the moving party cannot prevail unless it establishes that it is entitled to judgment as a matter of law. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 417 (4th Cir. 1993). It is only once the moving party has met this burden that the non-moving party must come forward and demonstrate that such an issue does, in fact, exist. Bouchat, 346 F.3d at 522.

The defendants have not met their initial burden so as to require the plaintiffs to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The defendants argue that the complaint does not articulate a legal theory or allege sufficient facts to justify relief. Presumably this is because the plaintiffs do not identify any particular legal duty that required the defendants to continue providing steam at the time that they stopped. This alone, however, does not entitle the defendant to summary judgment. The moving party's burden requires it to show "that there is an absence of *evidence* to support the nonmoving party's case." Celotex v. Catrett, 477 U.S. 317, 325 (1986) (emphasis added). The defendants may, of course, meet this burden by introducing their own affidavits negating the existence of a legal duty, see, e.g., Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970), or by demonstrating that the

10

plaintiffs do not have sufficient evidence to carry their burden of proof at trial on a dispositive issue. Celotex, 477 U.S. at 325. Because the defendants have not done so, however, summary judgment is not appropriate with respect to the plaintiffs' claim for damages.[5]

V.

Finally, although they have not made a request for sanctions, which, pursuant to Rule 11(c)(1)(A) must "be made separately from other motions or requests," the defendants argue that the original complaint filed in a court of the Commonwealth of Virginia was not signed by counsel for plaintiff Northern Nekoosa Corp., and so should be stricken. In removal cases, however, the Federal Rules of Civil Procedure "govern procedure *after* removal." Fed. R. Civ. P. 81(c) (emphasis added). Because state court pleadings are not subject to the Federal Rules of Civil Procedure the plaintiffs' pre-removal state pleading is not subject to the strictures of Rule 11. See Kirby v. Allegheny Beverage Corp., 811 F.2d 253, 256–57 (4th Cir. 1987). Even if the original state court pleading were subject to the rule and had not been properly signed, it need only be stricken if the omission is not "corrected promptly after being called to the attention of the attorney or party." Fed. R. Civ. P. 11(a).[6]

V.

For the reasons stated above, the court denies the plaintiffs' motion for summary judgment and grants defendant TVII's motion to dismiss. The court grants the defendants'

---

[5] The court expresses no opinion as to whether the plaintiffs' damages claim could withstand a motion for summary judgment properly made and supported pursuant to Rule 56 of the Federal Rules of Civil Procedure. Because the defendant has not met its burden, the court has no occasion to consider whether the plaintiff can "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

[6] Correction can be made by signing the paper on file or by submitting a duplicate that contains the signature. Becker v. Montgomery, 532 U.S. 757, 764 (2001).

11

motion for summary judgment with respect to the plaintiffs' request for declaratory relief, and denies the defendants' motion with respect to the plaintiffs' claim for damages.

**ENTER:** This 20th day of October, 2006.

*/s/ James C. Turk*
SENIOR UNITED STATES DISTRICT JUDGE